**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| QSR STEEL CORPORATION, LLC | : | Case No. 24-20562 (JJT) |
|  | : |  |
|  | : |  |
|  | : |  |
| Debtor. | : |  |
|  | : |  |
|  | : |  |
| HAYNES CONSTRUCTION COMPANY | : | Adv. Pro. No. 24- |
|  | : |  |
| Plaintiff | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| QSR STEEL CORPORATION, LLC | : |  |
|  | : |  |
| Defendant | : | October 16, 2024 |
|  | : |  |

**ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A) AND (6)**

Plaintiff, Haynes Construction Company ("Haynes"), by and through its attorneys,

pursuant to 11 U.S.C. § 523(a)(2)(A) and (6), § 1192, and Bankruptcy Rule 7001, files this

Complaint for determination of the dischargeability of debts owed to Haynes by QSR Steel

Corporation, LLC ("QSR" or the "Debtor").  In support thereof, Haynes states as follows:

**INTRODUCTION**

This adversary proceeding arises because the Debtor has previously been found liable for

intentional and fraudulent conduct as well as for bad faith and, therefore, the debt owed to

Haynes is non-dischargeable.  *See Cantwell-Cleary Co. v. Cleary Packaging, LLC (In re Cleary*

*Packaging, LLC)*, 36 F.4th 509, 517-18 (4th Cir. 2022) (Bankruptcy Code § 523 exceptions to

{00383573.1 }

discharge apply to subchapter V corporate debtors); *Avion Funding, L.L.C. v. GFS Indus., L.L.C. (In re GFS Indus., L.L.C.)*, 99 F.4th 223, 227 (5th Cir. 2024) (same).[1]  The dispute between Haynes and the Debtor was arbitrated before the American Arbitration Association ("AAA"). The arbitrator, John C. Zacarro, Jr. (the "Arbitrator"), found, after 13 days of hearings and extensive briefing, that QSR was liable to Haynes for breaching the implied covenant of good faith and fair dealing and for intentional and fraudulent misrepresentations, as well as for breach of contract.

Specifically, the Arbitrator found in favor of Haynes and against QSR on the intentional and fraudulent misrepresentation claim, finding that QSR "repeatedly ***falsely*** certified its applications for payment, and ***falsely*** overstated the amount due to it in its mechanic's lien." Partial Award (defined below), p. 20.  In addition, the Arbitrator also found in favor of Haynes and against QSR on the implied covenant of good faith and fair dealing claim, finding that QSR "breached the implied covenant of good faith and fair dealing by ***fraudulently*** overbilling on its requisitions, not paying its suppliers and subcontractors, and filing a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project, holding steel for Sequence B hostage, and ***intentionally*** slowing down its work and steel delivery in order to extract a payment that was rightfully withheld by" Haynes.  (Emphasis added.)  Partial Award, pp. 19-20.

Therefore, the Arbitrator issued a partial award for $1,664,227.63 in favor of Haynes against the Debtor.  Subsequently, the Arbitrator issued a final award in favor of Haynes, which included additional attorney's fees and costs in the amount of $592,498.15, AAA fees, compensation, and expenses in the amount of $34,407.41, and post-judgment interest at the

---

[1] Haynes notes that the judgment against the Debtor has been appealed to the Connecticut Appellate Court.

statutory maximum of 10% per annum pursuant to Conn. Gen. Stat. ¶ 37-3a.  In total, Haynes was awarded and obtained judgment against QSR in the amount of $2,291,133.19, plus post-judgment interest.  As of the filing of QSR's bankruptcy petition, Haynes's claim against QSR, including accrued post-judgment interest and attorneys' fees, has increased to $2,633,130.09.

The Connecticut Superior Court (Vatti, J.) confirmed the arbitration awards on April 30, 2024, and entered judgment, which QSR appealed.  On June 13, 2024, Haynes filed an application for a prejudgment remedy seeking an attachment in the amount of $2,906,371.28, while QSR's appeal was pending in order to secure assets of QSR to satisfy the judgment.  A mere five days later, the Debtor filed its petition under Subchapter V of Chapter 11.

Because the Arbitrator found that the Debtor engaged in intentional and fraudulent conduct and breached the implied covenant of good faith and fair dealing in numerous ways, including through fraud, intentional conduct, misrepresentations and bad faith, and that the Debtor made intentional and fraudulent misrepresentations caused Haynes damages, Haynes's claim against the Debtor for $2,633,130.09, plus any post-petition interest, attorneys fees and/or costs that might be allowed, is non-dischargeable pursuant to §§ 523(a)(2)(A) and (a)(6) and 1192(2) of the Bankruptcy Code.

## PARTIES

1.      Haynes is a Connecticut corporation with a place of business located at 32 Seymour Avenue, Seymour, Connecticut 06483.

2.      The Debtor is a Connecticut limited liability company with a principal place of business located at 121 Elliott Street East, Hartford, Connecticut 06114.

## JURISDICTION AND VENUE

{00383573.1 }                                                     3

3. The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157(a), and 1334.

4. The claims for relief alleged by Haynes herein arise under 11 U.S.C. § 523 in the Debtor's bankruptcy case and, therefore, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

6. Haynes consents to the entry of a final order by the Court in connection with this adversary proceeding to the extent that it is later determined that the Court, absent the consent of the parties, cannot enter final orders or judgments in connection herewith in accordance with Article III of the United States Constitution.

## GENERAL FACTUAL BACKGROUND

7. Haynes and QSR entered into a written subcontract dated December 17, 2019 (the "Subcontract"), in the lump-sum amount of $2,850,000 for QSR to perform the structural steel and miscellaneous metals work at the construction project known as Washington Boulevard Apartments located at 1315 Washington Boulevard in Stamford, Connecticut 06907 (the "Project") in accordance with the Project plans and specifications.

8. Disputes arose between Haynes and QSR relating to the Project.

9. On February 9, 2021, Haynes filed a Demand for Arbitration against QSR (the "Demand", attached hereto as Exhibit A). In the Demand, Haynes brought three counts: Breach of Contract (First Count); Breach of Implied Covenant of Good Faith and Fair Dealing (Second Count); and Violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b *et seq.* (Third Count).

10.	On March 19, 2021, Haynes filed an Amended Demand for Arbitration against QSR (the "Amended Demand," attached as Exhibit B).  In the Amended Demand, Haynes asserted four causes of action: Breach of Contract (First Count); Breach of Implied Covenant of Good Faith and Fair Dealing (Second Count); Violation of CUTPA (Third Count); and Intentional and Fraudulent Misrepresentation (Fourth Count).  Haynes subsequently withdrew the CUTPA cause of action (Third Count).

11.	In the First Count, Haynes alleged that QSR breached the Subcontract in the following ways:

a.	QSR walked off and abandoned the Subcontract and the Project;

b.	QSR constructively terminated the Subcontract wrongfully;

c.	QSR failed and refused to provide sufficient properly skilled workmen and materials to the Project;

d.	QSR performed defective work, failed inspections and refused to correct the deficient work;

e.	QSR failed and refused to timely and completely deliver steel to the Project;

f.	QSR failed to provide specified materials to the Project;

g.	QSR failed to timely and completely perform its duties and obligations under the Subcontract and in accordance with the Project schedule;

h.	QSR delayed the Project;

i.	QSR stopped, delayed and interfered with the work on the Project;

j.	QSR railed and refused to pay its vendors and suppliers on the Project;

k.	QSR billed Haynes for work that it did not perform and failed and refused to credit Haynes for payments that Haynes made to QSR's unpaid vendors and supplies;

l.	QSR attempted to leverage Haynes and the Project owner, including but not limited to filing a fraudulent mechanic's lien, to pay QSR for amounts for which

QSR is not entitled by refusing to deliver steel to the Project and refusing to perform;

m. QSR failed and refused to comply with provisions of the Subcontract; and

n. QSR failed and refused to cure its defaults and material breaches of the Subcontract.

Amended Demand, ¶ 8, p. 2.

12. In the Second Count, QSR was obligated to act reasonably, and in good faith, in its dealings with Haynes pursuant to an implied covenant of good faith and fair dealing under the Subcontract. Amended Demand, ¶ 15, p. 3

13. Haynes alleged that QSR breached the implied covenant of good faith and fair dealing and acted in bad faith in the following ways:

a. QSR failed and refused to perform its work in accordance with the Subcontract and then walked off and abandoned the Project, intending to financially harm and damage Haynes. Amended Demand, ¶ 15, p. 3.

b. QSR billed Haynes for work that it did not perform and QSR failed and refused to credit Haynes for amounts that Haynes paid to QSR's unpaid vendors and supplies. *Id.*, ¶ 16, p.3.

c. QSR attempted to leverage Haynes to pay QSR amounts that were not due by refusing to perform, refusing to deliver steel, and refusing to complete its work. *Id.*, ¶ 17, p.3.

d. QSR failed and refused to pay vendors and suppliers despite representing that it had done so in order to induce Haynes to pay QSR for amounts not due. *Id.*, ¶ 18, p. 4.

e. QSR promised to deliver steel and then refused to do so in order to induce Haynes to pay QSR for amounts not due. *Id.*, ¶ 19, p. 4.

f. QSR recorded a fraudulent mechanic's lien on the Project attempting to leverage Haynes and the Project owner to pay amounts not due QSR, as well as to financially harm and damage Haynes and the Project owner. *Id.*, ¶ 20, p. 4.

{00383573.1 }                                    6

14. Haynes alleged that QSR's conduct, representations, acts and omissions were unreasonable under the circumstances, and that it suffered severe loss, costs, expenses, and damages, including attorneys' fees, for which QSR was liable. *Id.*, ¶¶ 22-23, p. 4.

15. In the Fourth Count of the Amended Demand, Haynes alleged that QSR made intentional and fraudulent misrepresentations

16. Specifically, Haynes alleged that QSR made numerous false representations as statements of fact, which were untrue and which QSR knew were untrue, including, but not limited to,

   a. Promising to perform work in accordance with the Subcontract but failing to do so and instead abandoning the Project and wrongfully terminating Haynes. Amended Demand, ¶ 32, p.6;

   b. Billing for work that it did not perform. *Id.*;

   c. Executing lien waivers, submitting requisitions and making representations that work was performed and vendors were paid but failing to perform said work and pay said vendors. *Id.*;

   d. Promising to deliver steel and then refusing to do so in order to induce Haynes to pay QSR for amounts not due. *Id.*; and

   e. Recording a fraudulent mechanic's lien on the Project attempting to leverage Haynes and the Project owner to pay amounts not due QSR, as well as to financially harm and damage Haynes and the Project owner. *Id.*

17. Haynes alleged that QSR made those false representations to induce Haynes to make payments, to avoid performing work, and to thwart Haynes's efforts to timely complete the Project, and that Haynes did in fact act upon QSR's false representations to Haynes, injure Haynes by paying QSR but not receiving full value for amounts paid, having to pay unpaid vendors and incurring costs to complete QSR's work (*Id.* ¶¶ 33-34, p. 6).

{00383573.1 }                                        7

18. As a result of QSR's intentional and fraudulent misrepresentations, Haynes alleged that it suffered and continues to suffer severe loss, costs, expenses and damages, including attorneys' fees, for which QSR was liable (*Id.* ¶¶ 35, p. 6).

19. In its prayer for relief in the Amended Demand, Haynes sought damages for the excess completion costs on the Project, delay damages for extended general conditions costs, the costs for the bond to discharge the mechanic's lien, as well as pre-judgment and post-judgment interest at the rate of 10%, and attorneys' fees and costs for the arbitration.

20. QSR filed a counterclaim against Haynes in the Arbitration.

21. On May 12, 2023, after 13 days of hearings and extensive briefing by the parties, the Arbitrator issued the Partial Final Award of Arbitrator, finding in favor of Haynes and against QSR on all of Haynes's claims, denying QSR's counterclaim, and awarding Haynes damages of $1,664,227.63, plus attorney's fees and costs (the "Partial Award", attached hereto as Exhibit C).

22. In addition to finding in favor of Haynes and against QSR on the breach of contract claim (First Count of Amended Demand), the Arbitrator also found in favor of Haynes on the breach of the implied covenant of good faith and fair dealing claim (Second Count of Amended Demand), and on the intentional and fraudulent misrepresentation claim (Fourth Count of Amended Demand).

23. Specifically, the Arbitrator found in favor of Haynes and against QSR on the intentional and fraudulent misrepresentation claim, finding that QSR "repeatedly *falsely* certified its applications for payment, and *falsely* overstated the amount due to it in its mechanic's lien." (Emphasis added.)  Partial Award, p. 20.

24.     The Arbitrator also found in favor of Haynes and against QSR on the implied covenant of good faith and fair dealing claim, finding that QSR "breached the implied covenant of good faith and fair dealing by ***fraudulently*** overbilling on its requisitions, not paying its suppliers and subcontractors, and filing a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project, holding steel for Sequence B hostage, and ***intentionally*** slowing down its work and steel delivery in order to extract a payment that was rightfully withheld by" Haynes.  (Emphasis added.) *Id.*, pp. 19-20.

25.     Furthermore, the Arbitrator awarded pre-judgment and post-judgment interest, because "the demands of justice warrant an award of interest due to the Respondent's conduct leading up to and upon the termination of the Subcontract, including impeding the progress of the work by refusing to deliver the steel to the Project, abandoning the Project, filing a mechanic's lien for amounts of money not due to it, and actively impeding the Claimant's attempts to mitigate the damage by purchasing the remaining steel from the Respondent or its subcontractor." *Id.*, at 21.

26.     On August 4, 2023, the Arbitrator issued the Final Award of Arbitrator awarding Haynes attorney's fees and costs in the amount of $592,498.15, as well as AAA fees, compensation, and expenses in the amount of $34,407.41, in addition to the amount awarded in the Partial Final Award of Arbitrator (the "Final Award", attached hereto as Exhibit D).  The Final Award also awarded Haynes post-judgment interest at the maximum statutory rate of 10% per annum pursuant to Conn. Gen. Stat. ¶ 37-3a.

27.     The Final Award and Partial Award were confirmed, and judgment was entered, by Judge Neeta Vatti of the Connecticut Superior Court on April 30, 2024.  A copy of the Memorandum of Decision is attached hereto as Exhibit E.

28.     In total, Haynes was awarded and obtained judgment against QSR in the amount of $2,291,133.19, plus post-judgment interest.  As of the filing of QSR's bankruptcy petition, Haynes's claim against QSR, including accrued post-judgment interest and attorneys' fees, has increased to $2,633,130.09, as set forth in Haynes's proof of claim filed on August 6, 2024.

**COUNT ONE:  NONDISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. § 523(a)(2)(A)**

29.     Haynes repeats and realleges the allegations set forth in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30.     Bankruptcy Code § 523(a)(2)(A) provides, in relevant part"[a] discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt. . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

31.     The Arbitrator found that QSR "breached the implied covenant of good faith and fair dealing by fraudulently overbilling on its requisitions, not paying its suppliers and subcontractors, and filing a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project, holding steel 'hostage'…, and intentionally slowing down its work and steel delivery in order to extract a payment that was rightfully withheld by" Haynes.  Partial Award, p. 20.

32.     The Arbitrator further found that QSR "repeatedly falsely certified its applications for payment, and falsely overstated the amount due to it in its mechanic's lien."  The Arbitrator determined this constituted fraudulent conduct.

33. The fraudulent conduct of the Debtor with respect to Haynes on the Project falls within the purview of § 523(a)(2)(A) as the Debtor sought payment from Haynes through false pretenses, a false representation, or actual fraud as follows:

      a.      QSR fraudulently overbilled its payment requisitions;

      b.      QSR filed a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project;

      c.      QSR held steel hostage;

      d.      QSR intentionally slowed down its work and steel delivery in order to extract a payment that was rightfully withheld by Haynes;

      e.      QSR repeatedly falsely certified its applications for payment;

      f.      QSR falsely overstated the amount due to it in its mechanic's lien;

      g.      QSR made false representations to Haynes and committed fraud concerning payments owed to QSR and work it had not performed on the Project and for suppliers it had not paid, and in filing a false mechanic's lien claiming it was owed money for services it did not perform;

      h.      At the time QSR made those fraudulent representations to Haynes, they knew them to be false;

      i.      QSR made the false representations with the intention and purposes of deceiving Haynes to overpay QSR for work it did not perform and for suppliers that QSR did not pay;

      j.      Haynes justifiably relied on these representations; and

      k.      Haynes sustained loss and damages as a result of the false representations that have been made.

34.   As a direct and proximate result of the Debtor's conduct, Haynes was damaged.

35.   Accordingly, as a direct and proximate result of the Debtor's conduct, Haynes is entitled to a determination that its debts resulting from the same, specifically the Partial Award, the Final Award, post-judgment interest at 10% per annum pursuant to Conn. Gen. Stat. § 37-3a, and any attorneys' fees and costs to be subsequently awarded by the Court, are excepted from discharge pursuant to § 523(a)(2)(A).

### COUNT TWO:  NONDISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

36.   Haynes repeats and realleges the allegations set forth in paragraphs 1 through 28 of this Complaint as if fully set forth herein.

37.   Bankruptcy Code § 523(a)(6) provides, in relevant part, that, "[a] discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt. . . for willful and malicious injury by the debtor to another entity or to the property of another entity…." 11 U.S.C. § 523(a)(6).

38.   The Arbitrator found that QSR "breached the implied covenant of good faith and fair dealing by fraudulently overbilling on its requisitions, not paying its suppliers and subcontractors, and filing a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project, holding steel 'hostage'…, and intentionally slowing down its work and steel delivery in order to extract a payment that was rightfully withheld by" Haynes.  Partial Award, p. 20.

39.   The Arbitrator further found that on Haynes's claim for intentional and fraudulent misrepresentation, QSR "repeatedly falsely certified its applications for payment, and falsely overstated the amount due to it in its mechanic's lien."

40. The conduct of the Debtor with respect to Haynes on the Project falls within the purview of § 523(a)(6) as such conduct was knowing, deliberate and without justification or excuse and with an intent to cause harm to Haynes as follows:

   a. QSR fraudulently overbilled its payment requisitions;

   b. QSR filed a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project;

   c. QSR held steel hostage;

   d. QSR intentionally slowed down its work and steel delivery in order to extract a payment that was rightfully withheld by Haynes;

   e. QSR repeatedly falsely certified its applications for payment;

   f. QSR falsely overstated the amount due to it in its mechanic's lien;

   g. QSR intentionally, fraudulently and deliberately injured Haynes through the fraudulent billing, not paying its subcontractors, and filing a mechanic's lien claiming money that was not rightfully due to it because of its abandonment of the Project, holding steel "hostage" on the Project, refusing to pay suppliers, and intentionally slowing down its work and steel delivery in order to extract a payment;

   h. QSR conduct willfully and intentionally injured Haynes; and

   i. QSR's conduct resulted in Haynes suffering a loss.

41. The Debtor's conduct caused willful, intentional and malicious injury within the meaning of 11 U.S.C. § 523(a)(6).

42. As a direct and proximate result of the Debtor's conduct, Haynes was damaged.

43. Accordingly, as a direct and proximate result of the Debtor's conduct, Haynes is entitled to a determination that its debts resulting from the same, specifically the Partial Award,

the Final Award, post-judgment interest at 10% per annum pursuant to Conn. Gen. Stat. § 37-3a, and any attorneys' fees and costs to be subsequently awarded by the Court, are excepted from discharge pursuant to § 523(a)(6).

**WHEREFORE**, Plaintiff Haynes Construction Company prays for the following relief:

1.      A determination that the Debtor's debts to Haynes, specifically the Partial Award, the Final Award, post-judgment interest at 10% per annum pursuant to Conn. Gen. Stat. § 37-3a, and any attorneys' fees and costs to be subsequently awarded by the Court, are excepted from any discharge that may be granted to the Debtor pursuant to 11 U.S.C. § 523(a)(2)(A);

2.      A determination that the Debtor's debts to Haynes, specifically the Partial Award, the Final Award, post-judgment interest at 10% per annum pursuant to Conn. Gen. Stat. § 37-3a, and any attorneys' fees and costs to be subsequently awarded by the Court, are excepted from any discharge that may be granted to the Debtor pursuant to 11 U.S.C. § 523(a)(6);

3.      Reasonable attorneys' fees;

4.      Costs and disbursements of this action; and

5.      Such other relief as the Court deems just and proper.

**THE PLAINTIFF,**
**HAYNES CONSTRUCTION COMPANY**

By: */s/ Joanna M. Kornafel*
       Jeffrey M. Sklarz (ct20938)
       Joanna M. Kornafel (ct29199)
       Green & Sklarz, LLC
       One Audubon Street, Third Floor
       New Haven, CT 06511
       (203) 285-8545
       Fax: 203-823-4546
       jsklarz@gs-lawfirm.com
       jkornafel@gs-lawfirm.com